UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

OMETRIUS PEREZ,
    *Plaintiff*,

    v.

ROLLIN COOK *et al.*,
    *Defendants*.

No. 3:19-cv-02012 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Ometrius Perez is a sentenced prisoner in the custody of the Connecticut

Department of Correction ("DOC") and is currently imprisoned at Garner Correctional

Institution ("Garner"). He has filed this lawsuit *pro se* against several DOC officials, principally

alleging that the defendants have been deliberately indifferent to his severe vision issues in

violation of his constitutional rights. I will allow some of Perez's claims to proceed.

BACKGROUND

The following facts are derived from the allegations in the complaint and the attached

medical records and grievances, and are accepted as true only for purposes of this ruling. Doc.

#1. Perez names four defendants in their individual and official capacities: (1) Rollin Cook, the

former DOC Commissioner; (2) Peter Jamison, an optometrist at Garner; (3) Cynthia Nadeau, a

nurse and the Health Services Review Coordinator at Garner; and (4) John Olson, a counselor

and the Administrative Remedy Coordinator at Garner. *Id.* at 2-3 (¶¶ 4-8).[1] Perez's official-

capacity claim against former Commissioner Cook is now against current DOC Interim

---

[1] Perez erroneously spelled the name of the former DOC Commissioner as "Roland Cook," when in fact his name is
Rollin Cook. The Court uses the correct spelling.

Commissioner Angel Quiros by way of automatic substitution. *See* Fed. R. Civ. P. 25(d);

*D'Alessandro v. City of New York*, 713 F. App'x 1, 9 n.9 (2d Cir. 2017).

Perez was born with high myopia, has been legally blind since 2008, and has had cone-

rod dystrophy possibly since 2010. Doc. #1 at 18 (¶ 51); *see, e.g.*, *id.* at 101-04, 116, 140. He

alleges that since 2010 the defendants have refused to provide him with his prescribed

specialized eyeglasses with complete peripheral coverage, high-index lightweight thin lenses,

and tint because they exceed the $100 budget that the DOC sets for prisoner eyeglasses

purchases. *Id.* at 20 (¶ 55). He further alleges that since 2014, the defendants have refused to

provide him with his prescribed contact lenses or to resupply his depleted store of lenses, forcing

him to reuse an old pair of disposable 30-day, limited-wear contact lenses since June 2019. *Id.* at

20 (¶ 55), 20 n.7.

In March 2015, low-vision specialist Dr. Joan Draper of the Eye Care Group prescribed

Perez disposable contact lenses as well as three pairs of specialized eyeglasses: (1) an outdoor

tinted, antireflective pair to be worn over contact lenses; (2) an indoor lightweight, tinted, and

antireflective pair to be worn over contact lenses; and (3) a general-use transition, antireflective

pair to be used without contact lenses. *Id.* at 19 (¶¶ 52-53); *see also id.* at 118-24.

In July 2017, Perez was placed on behavioral observation status ("BOS") and temporarily

stripped of his indoor prescription eyeglasses. *Id.* at 21-22 (¶ 59). When he was taken off BOS

and his eyeglasses were returned to him, he discovered that one of its arms had snapped off. *Id.*

at 22 (¶ 59); *see also id.* at 126.

In September 2017, Perez submitted a Request for Reasonable Accommodations (Form

CN 101902) requesting that his indoor prescription eyeglasses be replaced. *Id.* at 22 (¶ 60); *see

also id.* at 128-29. In October 2017, the prison's Americans with Disabilities Act coordinator

informed Perez that she was arranging for him to be seen by defendant Dr. Jamison so that he

could request a replacement pair of eyeglasses. *Ibid.* (¶ 61); *see also id.* at 131. The next day, Dr.

Jamison met with Perez, recommending a change in Perez's contact lens prescription and noting

that he would "consult w[ith] [the] administration for [an] exception to get frames w[ith] larger

periph[eral] coverage [and] indoor tint." *Id.* at 22 (¶ 61); *see also id.* at 133. But Dr. Jamison

never actually consulted with the DOC or Garner administrations about replacing Perez's indoor

prescription eyeglasses. *Id.* at 23-24 (¶ 64).

In November 2017, Dr. Jamison submitted a Utilization Review Committee Request

requesting that Perez be seen by an ophthalmologist at the University of Connecticut Health

Center ("UConn") for a retinal evaluation. *Id.* at 23 (¶ 62); *see also id.* at 135. In January 2018,

Dr. Jamison's request was approved. *Id.* at 23 (¶ 62); *see also id.* at 137. In May 2018, Perez was

evaluated by UConn ophthalmologist Elizabeth Simmons, who recommended that Perez be

evaluated by Dr. Jamison for eyeglasses, low-vision aids, and accommodations. *Id.* at 23 (¶ 63);

*see also id.* at 139-42. But Dr. Jamison "outright refused" to evaluate Perez and to update his

eyeglasses and contact lens prescriptions from 2015. *Id.* at 23 (¶ 64).

On July 10, 2019, Perez gave Nurse Angel Graniello an Inmate Request Form (Form CN

9601) requesting that Dr. Jamison provide him with new contact lenses and replacement indoor

prescription eyeglasses. *Id.* at 6-7 (¶ 18); *see also id.* at 52. On July 24, 2019, Nurse Angel

assured Perez that she left the request in Dr. Jamison's mailbox and placed an alert of the request

on the medical department computer, which Dr. Jamison responded to. *Id.* at 7-9 (¶¶ 19-21, 24).

But Perez soon learned through a correction officer that defendant Nurse Nadeau said there was

no Inmate Request Form from Perez. *Id.* at 8 (¶ 22). In response to an inquiry from Perez, the

officer stated that Dr. Jamison was only scheduled to see one inmate that afternoon, and told

Perez to submit another Inmate Request Form. *Ibid.* (¶ 23); *see also id.* at 63-65.

On July 26, 2019, Perez placed in his unit's health services box another Inmate Request

Form as well as an Inmate Administrative Remedy Form (Form CN 9602), attaching his July 10

request. *Id.* at 9 (¶ 25); *see also id.* at 54, 56-57. He submitted copies of those forms to Deputy

Warden of Programs and Treatment Egan, requesting an investigation into the disappearance of

his July 10 request. *Id.* at 9 (¶ 26); *see also id.* at 59-61. Perez also asked a nurse whether Dr.

Jamison could see him regarding his July 10 request, but after checking with Dr. Jamison, she

responded "in an aggressive tone" that "your name has been added to the list to be seen by the

eye doctor, and since you had filed a grievance on this matter, that[']s it." *Id.* at 9-10 (¶ 27).

On July 31, 2019, Nurse Angel locked Perez out of his cell to triage him regarding his

July 10 request and attempted to obtain his authorization for a $3 deduction from his inmate

account for a sick call, which he refused to give. *Id.* at 10-11 (¶¶ 28-30); *see also id.* at 71, 73.

Nevertheless, $3 was deducted from his account. *Id.* at 11 (¶ 30).

On August 7, 2019, Nurse Nadeau escorted Perez to Dr. Jamison, who attempted to fit

Perez for regular state-issued frames without complete peripheral coverage. *Id.* at 11 (¶ 31).

When Perez protested that those frames would not meet his needs and that Dr. Jamison had said

in October 2017 that he would consult with the administration in order to obtain frames with

larger peripheral coverage and indoor tint for Perez, Dr. Jamison responded curtly that "these are

the only available frames." *Id.* at 11-12 (¶¶ 31-33). Further, although Perez informed Dr. Jamison

that his contact lens supply had depleted and his vision had worsened since his last prescription

was issued in 2015, Dr. Jamison refused Perez's request for a referral to Dr. Draper to update his

prescription. *Id.* at 11-12 (¶¶ 31, 33). "Instead of documenting his farce of an examination," Dr.

Jamison delegated the task to Nurse Nadeau, who "falsely documented" that Perez had agreed to return to UConn for testing when in fact he had requested a referral to Dr. Draper. *Id.* at 12 n. 5.

On August 13, 2019, Perez received a Grievance Returned without Disposition Form (Form CN 9606) with copies of his July 10 inmate request and his July 26 medical grievance enclosed. *Id.* at 12-13 (¶ 34). Therein, Nurse Nadeau noted via checkboxes that Perez's medical grievance was returned without disposition because "a grievance must be filed on CN 9602, Inmate Administrative Remedy Form," and "[e]ach grievable matter shall be submitted on a separate CN 9602, Inmate Administrative Remedy Form." *Id.* at 78. But she separately stated that the grievance was returned because he was "see[n] by the optometrist" on August 7 and indicated via a checkbox that he had "exhausted DOC's Administrative Remedies." *Id.* at 79.

On August 15, 2019, Perez submitted another Inmate Request Form and an Appeal of Health Services Review Form (Form CN 8901) to the Director of Health Services in order to appeal the disposition of his July 26 medical grievance, and he also forwarded copies to Deputy Warden Egan requesting verification that the forms were in fact sent to the Director of Health Services. *Id.* at 14 (¶¶ 38-39); *see also id.* at 82-84, 86. On August 20, 2019, the forms were returned to him without explanation in an envelope with Nurse Nadeau's writing on it. *Id.* at 14-15 (¶¶ 39-40); *see also id.* at 88.

On August 21, 2019, Perez submitted an Inmate Request Form and Inmate Administrative Remedy Form against Nurse Nadeau to defendant Counselor Olson. *Id.* at 16 (¶ 43); *see also id.* at 90-92. On August 28, 2019, the forms were returned to Perez with a sticky note in Nurse Nadeau's handwriting stating that "per policy, a returned without disposition cannot be appealed." *Id.* at 16-17 (¶¶ 44-45); *see also id.* at 94, 96.

Perez alleges that because of Dr. Jamison's refusal to provide him with his prescription eyeglasses, he "suffers excruciating optical pain on a daily basis due to his extreme sensitivity and exposure to light" and "has repeatedly fallen down stairs, [and] walked into objects causing him to sustain injuries/contusions to his face, shoulders, and legs [ ] due to his poor dept[h] perception, [and] diminished central vision and visual field." *Id.* at 17 (¶¶ 46-47).

On November 26, 2019, Perez filed this lawsuit alleging that: (1) Dr. Jamison's repeated refusal to evaluate and provide him his prescribed eyewear and former Commissioner Cook's policy of limiting the cost of prisoners' eyeglasses to $100 constitute deliberate indifference to his serious medical need in violation of the Eighth Amendment; and (2) Nurse Nadeau and Counselor Olson obstructed his ability to obtain administrative relief, and Nurse Nadeau retaliated against him, in violation of the First Amendment. *Id.* at 18-31 (¶¶ 49-82). He seeks declaratory and injunctive relief, as well as compensatory and punitive damages from each defendant. *Id.* at 32-35.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the compliant, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough

facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See,*

*e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may

not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See,*

*e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Eighth Amendment claim*

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel

and unusual punishment. *See* U.S. Const. amend. VIII. The Supreme Court has long recognized

that prison officials violate the Eighth Amendment if they are deliberately indifferent to a

substantial risk of serious harm or to the serious medical needs of a sentenced prisoner. *See*

*Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

A deliberate indifference claim under the Eighth Amendment has two requirements. First,

the prisoner must allege that he was subject to an objectively serious risk of harm or serious

medical need, as distinct from what a reasonable person would understand to be a minor risk of

harm or minor medical need. Second, the prisoner must allege that a defendant prison official

acted not merely carelessly or negligently but with a subjectively reckless state of mind akin to

criminal recklessness (*i.e.*, reflecting actual awareness of a substantial risk that serious harm to

the prisoner would result). *See Benjamin v. Pillai*, 794 F. App'x 8, 11 (2d Cir. 2019) (citing

*Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also, e.g.*, *Spavone v. N.Y. State*

*Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d

Cir. 2012); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

A denial of prescription eyewear resulting in a prisoner suffering severe pain, falling

down stairs, and walking into objects, as pled here, suffices to meet the first requirement. *See*

*Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996); *McClain v. Semple*, 2020 WL 1914933, at *5

(D. Conn. 2020). It also satisfies the second requirement that, despite Perez's making Dr.

Jamison aware that his vision had worsened since his last eye examination in 2015, that his

indoor prescription eyeglasses had broken, and that his contact lens supply had run out, and

despite an ophthalmologist's referral to Dr. Jamison to conduct a new evaluation of Perez, Dr.

Jamison refused to evaluate Perez, to update his prescription, or to request that the DOC permit

Perez to exceed the $100 per prisoner budget to obtain his prescription eyeglasses. *See*

*Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020).

On the other hand, the complaint does not adequately plead an individual-capacity claim

against former Commissioner Cook. There are no allegations that the Commissioner was aware

of Perez's problems. Nor does it plausibly allege a deliberate indifference claim against the

Commissioner solely on the basis that he was responsible in general for the DOC's policy that

places cost limitations on eyeglass equipment. *See id.* at 124 (affirming dismissal of supervisory

liability claim because "generalized allegations are insufficient to show that Graham participated

in the delay in Lombardo's medical treatment, that he was grossly negligent in supervising

medical staff, that he had created or allowed a policy of delaying treatment, or that he was aware

of the delay in Lombardo's treatment and failed to intervene").

Because Interim Commissioner Quiros and Dr. Jamison are officials of the State of

Connecticut, the state's sovereign immunity forecloses Perez from proceeding against the

defendants in their official capacities to the extent that he seeks an award of money damages. *See*

*Kentucky v. Graham*, 473 U.S. 159, 169 (1985). On the other hand, sovereign immunity poses no

bar to Perez's official capacity claims proceeding to the extent that his complaint seeks relief for

continuing deliberate indifference to his serious medical need. *See Virginia Office for Prot. &*

8

*Advocacy v. Stewart*, 536 U.S. 247, 254 (2011); *Tsirelman v. Daines*, 794 F.3d 310, 313-14 (2d

Cir. 2015). Because an official capacity claim amounts to a claim against the state itself, *see*

*Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007), and because Perez seeks injunctive

relief, I will allow Perez's Eighth Amendment claim to proceed against Dr. Jamison in his

individual capacity for money damages and against Dr. Jamison and Interim Commissioner

Quiros in their official capacities for injunctive relief.

### First Amendment claims

Perez alleges that Nurse Nadeau's return-without-disposition of his July 26 medical

grievance notwithstanding that he had properly grieved the matter was "an attempt to preclude

[him] from exhausting [the] Department of Correction's medical Administrative Remedy

procedures . . . ." Doc. #1 at 13 (¶¶ 35-36). He further alleges that her refusal to process his

August 15 appeal of that grievance "constitute[d] a constructive denial of [his] use of [the]

Department of Correction's Administrative Remedy for Health Services procedures," and that it

was "in retaliation and reprisal" for his July 26 grievance accusing medical staff of mishandling

his July 10 inmate request. *Id.* at 15-16 (¶¶ 41-42). Perez also alleges that Counselor Olson's act

of providing his August 21 administrative remedy form to Nurse Nadeau "constructively denied

[him] his right to utilize [the] Department of Correction's Administrative Remedy procedures to

address staff misconduct and to exhaust those procedures." *Id.* at 16-17 (¶ 45). I understand these

allegations to raise First Amendment redress-of-grievance and retaliation claims.

The First Amendment "functions only to prohibit the government from obstructing the

right to petition" and it "'does not impose any affirmative obligation on the government to listen,

to respond or . . . to recognize [a grievance].'" *Boddie v. Alexander*, 356 Fed. App'x 438, 440 (2d

Cir. 2009) (quoting *Smith v. Ark. State Highway Emps.*, 441 U.S. 463, 465 (1979) (*per curiam*));

*see also Holmes v. City of New York*, 2018 WL 4211311, at *8, *8 n.6 (S.D.N.Y. 2018) (noting

that "courts have recognized that inmate grievance procedures are not constitutionally required,

and allegations that prison officials violated or failed to enforce those procedures do not give rise

to a § 1983 claim," nor a Fourteenth Amendment due process claim). There is nothing in Perez's

allegations to suggest he was categorically barred from complaining to any public officials or, as

is obvious from this ruling, to the courts about his alleged mistreatment. Nor has Perez plausibly

alleged any harm from Nadeau or Olson's conduct. *See Torres v. Trombly*, 2004 WL 1497542, at

*7-8 (D. Conn. 2004) (dismissing First Amendment redress-of-grievance claim where no harm to

prisoner from interception of grievance by prisoner to prison warden).

Neither has Perez plausibly alleged a First Amendment retaliation claim. "Prison officials

may not retaliate against inmates for exercising their constitutional rights." *Miller v. Semple*,

2019 WL 6307535, at *3 (D. Conn. 2019) (quoting *Riddick v. Arnone*, 2012 WL 2716355, at *6

(D. Conn. 2012)). But "[t]o prevail on a First Amendment retaliation claim, [Perez] must

establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse

action against [him], and (3) that there was a causal connection between the protected [conduct]

and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019); *Holland v. Goord*,

758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted). Although Perez alleges that

Nurse Nadeau's refusal to process his August 15 appeal was in retaliation for his July 26

grievance, he fails to plausibly allege any facts to show that the refusal was in any way causally

connected to his July 26 grievance as opposed to her stated reason for the refusal, whether or not

this stated reason is erroneous (that prisoners cannot appeal grievances returned without

disposition). Accordingly, I will dismiss the First Amendment claims, and I will dismiss

defendants Nadeau and Olson from this action.

CONCLUSION

In accordance with the foregoing, the Court enters the following orders:

(1) Perez's Eighth Amendment claim for deliberate indifference to serious medical need may proceed with respect to the denial of a new evaluation and his prescribed eyewear against Dr. Jamison in his individual capacity for money damages and against Dr. Jamison and Interim Commissioner Quiros in their official capacities for injunctive relief. All remaining claims and defendants are DISMISSED.

(2) The Clerk shall verify the current work address for Dr. Jamison with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to Dr. Jamison at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests by not later than the **thirty-fifth (35) day** after mailing. If Dr. Jamison fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on Dr. Jamison, and Dr. Jamison shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on defendants Dr. Jamison and Interim Commissioner Quiros at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within twenty-one (21) days from the date of this Order and to file a return of service within thirty (30) days from the date of this Order. It is so ordered.

(4) All defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

11

(5) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) The discovery deadline is extended to **six months (180 days)** from the date of this Order. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this order. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(7) The deadline for summary judgment motions is extended to **seven months (210 days)** from the date of this Order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (*i.e.*, a motion to dismiss or a motion for summary judgment) within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify defendants or defense counsel of his new address.

(10) Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 10th day of July 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge